IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISA CHICAGO WHOLESALE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No.: 08-CV-6538 |
| vs. | ) |
| | ) Judge Joan H. Lefkow |
| | ) |
| SWISHER INTERNATIONAL, INC., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff, ISA Chicago Wholesale, Inc. ("ISA"), filed a complaint against one of its suppliers, Swisher International, Inc. ("Swisher"), alleging price discrimination in violation of Section 2 of the Clayton Act, 38 Stat. 730, as amended by the Robinson-Patman Price Discrimination Act, 49 Stat. 1526, codified at 15 U.S.C. § 13 ("Robinson-Patman Act" or "Act").[1] ISA seeks both injunctive relief (Count I) and damages (Count II). Swisher now moves pursuant to Federal Rule of Civil Procedure 12(b)(3) to dismiss the complaint for improper venue under 28 U.S.C. § 1406(a), and for failure to state a claim pursuant to Rule 12(b)(6). In the alternative, Swisher moves to transfer the case under 28 U.S.C. § 1404(a). For the reasons stated below, the Swisher's Rule 12(b)(3) motion to dismiss for improper venue [#10] is granted.

---

[1] Jurisdiction is proper under 15 U.S.C. § 15 and 28 U.S.C. § 1331.

1

**BACKGROUND**

Swisher manufactures and sells tobacco products, including its famous Swisher Sweet cigars, throughout the world. Its principal place of business, however, is in Jacksonville, Florida. ISA was, at all times relevant to this case, one of Swisher's distributors in Illinois, where ISA is based. ISA purchased cigars and other tobacco-related products directly from Swisher, and distributed them to wholesalers, sub-wholesalers and retailers until August 2008, when Swisher decided to stop selling its products to ISA. By that time, the parties were already litigating the first of two lawsuits filed by ISA in this district.

**I.    Swisher's Alleged Price Discrimination**

In this case, ISA contends that Swisher's pricing policy was discriminatory because Swisher offered certain distributors higher discounts on its products than others. ISA alleges that Swisher normally offered it a discount of 10% off its invoice price[2] but offered discounts ranging from 13% to 18% or higher to certain "favored distributors"[3] whom ISA asserts were "similarly situated to [ISA] in that they purchase[d] similar quantities and types of Products from Swisher." Compl. ¶ 17. ISA further alleges that Swisher offered the favored distributors certain one-time or periodic discounts ("additional discounts") not available to ISA and other distributors.[4] Although ISA's complaint is not entirely clear, the discounted price offered by Swisher appears

---

[2] Beginning in 2007, ISA alleges that Swisher increased ISA's discount to 12%.

[3] ISA alleges that House of Oxford and CSA are two of Swisher's favored distributors.

[4] While Swisher may not have offered ISA the same additional discounts it offered the favored distributors, Swisher did offer ISA some additional discounts because another suit ISA filed in this district is premised on Swisher's allegedly unfulfilled promise to issue credit memos for additional discounts offered at a 2007 trade show. *See* Compl. ¶¶ 10-15 (Docket No. 1) in *ISA Chicago Wholesale, Inc.* v. *Swisher Int'l Corp., Inc.*, No. 08 CV 3461 (N.D. Ill filed June 17, 2008). In the complaint in that case, ISA also alleges that Swisher gave ISA an additional discount on orders it placed at a trade show in 2006. *Id.*

to have been reflected on its invoices to distributors, while the additional discounts were given off-invoice via credit memos which reimbursed the distributor.[5]

## II. The Terms of the Credit Applications

In 2005, ISA began to purchase Swisher's products on credit pursuant to the terms of credit applications executed on January 31, 2005, July 12, 2005, and January 18, 2006 ("Credit Applications"). Def.'s Mem. in Supp. of its Mot. to Dismiss at Ex. 1 (hereinafter, "Def.'s Mem.").[6] The Credit Applications are identical and provide in relevant part,

> Any contractual disagreement between Swisher and Applicant shall be governed by the laws of the State of Florida and *any legal disputes arising out of this Agreement shall be resolved in Jacksonville, Florida.*
>
> Applicant is applying for credit with Swisher Int'l, Inc. and agrees to pay all amounts when due in accordance with the above terms. Applicant understands that *all purchases of products from Swisher are subject to all terms and conditions contained in the Customer Credit Application* and all other terms and conditions contained in any Swisher invoices.

*Id.* (emphasis added).

## III. The Parties' Other Litigation

On June 17, 2008, ISA filed suit in this district alleging that Swisher breached an oral promise to give ISA an additional discount on orders ISA placed at a trade show it held in 2007. *See ISA Chicago Wholesale, Inc.* v. *Swisher Int'l Corp., Inc.*, No. 08 CV 3461 (N.D. Ill) (filed June 17, 2008) (hereinafter "*Trade Show Discount Suit*").[7] On November 8, 2008, Swisher filed suit against ISA and its President, Muhammad Inayat, in state court in Jacksonville, Florida to

---

[5] No invoices or credit memos have been submitted by the parties.

[6] Prior to 2005, ISA alleges that it paid Swisher in cash in advance of sale.

[7] As discussed *infra* at 4, the *Trade Show Discount Suit* was dismissed for improper venue.

collect monies allegedly owed pursuant to the Credit Applications executed by ISA and personally guaranteed by Inayat. ISA subsequently removed the case to the federal district court for the Middle District of Florida, where it is currently pending. *See Swisher Int'l, Inc.* v. *ISA Chicago Wholesale, Inc.*, No. 08 CV 1179 (M.D. Fla., notice of removal filed Dec. 8, 2008) (hereinafter "*Collection Suit*"). ISA filed this price discrimination case less than a week later, on November 11, 2008.

As it has in this case, Swisher moved to dismiss the *Trade Show Discount Suit* under Rule 12(b)(3), arguing that the forum selection clause in the Credit Applications rendered the Northern District of Illinois an improper venue. ISA opposed the motion, contending, as it does here, that the forum selection clause in the Credit Applications were not mandatory, and did not apply to the dispute at issue. *See ISA Chicago Wholesale, Inc.* v. *Swisher Int'l, Inc*., No. 08 C 3461, 2009 U.S. Dist. LEXIS 29823, at *9 (N. D. Ill. Apr. 7, 2009). Judge Hibbler granted Swisher's motion, ruling that the forum selection clause was clearly mandatory in nature, *id*. at *9-10, and that it applied to the dispute over the alleged "broken promise made during the 2007 Trade Shows . . . . [because] [t]he plain language of [the] clause makes clear that ISA's purchases are covered by the Customer Credit Applications and are subject to the forum selection clause therein." *Id*. at *10-11.

The *Collection Suit* filed in Florida was stayed pending this court's ruling in the *Trade Show Discount Suit.* When the latter was dismissed, the former was reopened and ISA, undeterred by Judge Hibbler's ruling on the forum selection clause, renewed its request to transfer the *Collection Suit* to this district, where only this price discrimination suit remained pending. *Swisher Int.'l, Inc*. v. *ISA Chicago Wholesale, Inc.*, No. 08-cv-1179, 2009 U.S. Dist.

4

LEXIS 45793, at *6 nn.4-5 (M.D. Fla. May 19, 2009). The district court in Florida ruled that the forum selection clause was valid and enforceable and denied ISA's motion. *Id*. at *9-11.

## LEGAL STANDARD

28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which a case is filed laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." In the Seventh Circuit, "[a] lack of venue challenge, based upon a forum selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." *Cont'l Ins. Co.* v. *M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003). "In ruling on a motion to dismiss under Rule 12(b)(3), the court takes all the allegations in the complaint as true unless contradicted by an affidavit and may examine facts outside of the complaint." *Interlease Aviation Investors II (ALOHA) L.L.C.* v. *Iowa Corp.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003) (citing *Promero, Inc.* v. *Mammen*, No. 02 C 1191, 2002 U.S. Dist. LEXIS 21232 (N.D. Ill. Nov. 1, 2002)); *see also Universal Grading Serv.* v. *eBay, Inc.*, No. 08 CV 3557, 2008 U.S. Dist. LEXIS 49841, at *36 (S.D.N.Y. June 9, 2009) ("In considering a 12(b)(3) motion, courts may review materials outside of the pleadings. When analyzing plaintiff's preliminary *prima facie* showing, the facts must be viewed in the light most favorable to the plaintiff." (citations omitted)).

## ANALYSIS

Though neither party raised the issue, there is a threshold question as to what law should govern the court's interpretation of the forum selection clause. The Credit Applications provide that "[a]ny contractual dispute should be governed by the laws of the state of Florida," but the parties both rely on Seventh Circuit precedent. "Where the parties have not identified a conflict in state law, [the Seventh Circuit] will generally apply the law of the forum state." *Kochert* v.

5

*Adagen Med. Int'l*, 491 F.3d 674, 677 (citing *Gould* v. *Artisoft, Inc.*, 1 F.3d. 544, 549 n.1 (7th Cir. 1993)). It remains unsettled in this circuit, however, "whether state or federal law applies in a dispute over a forum selection clause when the case is dismissed rather than transferred pursuant to 28 U.S.C. § 1404(a)." *Id*. (citations and internal quotation marks omitted). Federal and Illinois law are in agreement that "ordinarily the parties' contractual choice of forum should be overridden only if that choice would impose significant costs on third parties or on the judicial system," *Abbott Labs.* v. *Takeda Pharm. Co., Ltd.*, 476 F.3d 421, 423 (7th Cir. 2007) (collecting cases), and this court's research does not reveal a conflict between the two jurisdictions on the pertinent issues of interpretation. In addition, the parties, as well as the courts that addressed these issues in the *Trade Show Discount Suit* and the *Collection Suit* applied federal law. Accordingly, this court will also apply federal law when analyzing whether the clause is mandatory and whether ISA's claim falls within its scope.

**I.     Is the forum selection clause mandatory?**

ISA contends that the forum selection clause is neither mandatory nor enforceable. Pl.'s Resp. to Def.'s Mot. to Dismiss at 4 (hereinafter "Pl.'s Resp."). "[W]here venue is specified with mandatory or obligatory language, the clause will be enforced." *Paper Express, Ltd.* v. *Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (citation omitted). The forum selection clause at issue is clearly mandatory, and therefore enforceable.[8] It reads "*any legal disputes arising out of this Agreement shall be resolved in Jacksonville, Florida*." Ex. 1 to Def.'s Mem. The coupling of the phrases "any legal disputes" and "shall be resolved" evinces an intent that the forum selection be mandatory. *See Paper Express*, 972 F.2d at 756 ("The

---

[8] ISA does not advance any argument regarding the enforceability of the forum selection clause other than its assertion that it is not mandatory.

phrase 'shall be filed,' coupled with the phrase 'all disputes,' clearly manifests an intent to make venue compulsory and exclusive."). Accordingly, as Judge Hibbler explained in the *Trade Show Discount Suit*, 2009 U.S. Dist. LEXIS 29823, at *9-10, the Seventh Circuit has interpreted forum selection clauses employing similar language to be mandatory and enforceable. *See Muzumdar* v. *Wellness Int.'l Network, Ltd.*, 438 F.3d 759, 761-62 (7th Cir. 2006) ("Jurisdiction and venue over any disputes arising out of this agreement shall be proper only in the federal or state courts in Dallas County, Texas."); *Paper Express*, 972 F.2d at 756 ("In all disputes arising out of the contractual relationship, the action shall be filed in the court which has jurisdiction for the principal place of business of the supplier . . . ."). Having determined that the forum selection clause is mandatory and enforceable, the court turns to ISA's contention that it is inapplicable to the claim alleged in this case.

**II.    Does ISA's statutory price discrimination claim fall within the scope of the forum selection clause?**

ISA argues that its claim for price discrimination in violation of the Robinson-Patman Act does not fall within the scope of the forum selection clause because the terms and conditions of the Credit Applications apply only to disputes arising out of Swisher's extension of credit to ISA. Pl.'s Resp. at 4. Because the Credit Applications do not specify the type, price, or quantity of the products to be sold, ISA asserts that "there is no basis to find that ISA ever agreed to bring its claim for price discrimination . . . only in Florida." *Id.* But, this argument ignores the provision of the Credit Application on which Swisher relies: "Applicant understands that *all purchases of products from Swisher are subject to all terms and conditions contained in the Customer Credit Application* and all other terms and conditions contained in any Swisher invoices." Ex. 1 to Def.'s Mem. (emphasis added). This provision, when read in conjunction

7

with the forum selection clause, evinces the parties' intent to resolve any legal disputes arising out of ISA's purchases in Florida. The question thus becomes whether ISA's price discrimination claim arises out of ISA's purchases of Swisher's products.

ISA brings its claim under § 13(a) of the Robinson-Patman Act, which provides in relevant part:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to discriminate in price between different *purchasers of commodities* of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

15 U.S.C. § 13(a) (emphasis added). ISA alleges that Swisher discriminated among its distributors by selling them its products at different prices. In Robinson-Patman Act parlance, this type of injury is known as secondary-line price discrimination. "Secondary-line cases . . . involve price discrimination that injures competition among the discriminating seller's customers . . . cases in this category typically refer to 'favored' and 'disfavored' purchasers." *See Volvo Trucks North Am., Inc.* v. *Reeder-Simco*, 546 U.S. 164, 176, 126 S. Ct. 860, 163 L. Ed. 2d 663 (2006).[9] Because the essence of ISA's secondary-line price discrimination claim is that Swisher discriminated between favored purchasers (House of Oxford and CSA) and disfavored purchasers (ISA and other distributors) by offering higher discounts to the former on

---

[9] To plead a secondary-line price discrimination claim under the Robinson-Patman Act, "[p]laintiff must allege (1) at least two sales of commodities (2) by the same seller (3) to different purchasers (4) at different prices to persons in competition with each other (5) that have an anti-competitive effect." *Goodloe* v. *Nat'l Wholesale Co., Inc.*, No. 03 C 7176, 2004 U.S. Dist. LEXIS 13630, at *26 (N.D. Ill. July 16, 2004) (citations and internal quotation marks omitted) (dismissing claim for failure to identify plaintiff's putative competitors or the favorable prices and terms granted them). Swisher argues that ISA has failed to adequately plead its claim, but the court need not reach this issue given this court's ruling on venue.

8

their orders, ISA's claim clearly arises out of its purchases of Swisher's products, and consequently falls within the scope of the forum selection clause contained in the Credit Applications. To the extent ISA argues that a statutory claim cannot fall within the scope of a contractual forum selection clause, its argument is unavailing. "[T]he existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, [and] does not make the dispute any less one arising under or out of or concerning the contract." *Am. Patriot*, 364 F.3d at 889. Federal courts routinely find that non-contractual claims fall within the scope of contractually-based forum selection clauses. *See Omron Healthcare, Inc.* v. *Maclaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994) (affirming district court's ruling that trademark claims fall within scope of forum selection clause in distribution agreement); *Hugel* v. *The Corp. of Lloyd's*, 999 F.2d 206, (7th Cir. 1993) (affirming the district court's ruling that breach of fiduciary duty claims fall within scope of membership agreement); *Stewart Org., Inc*. v. *Ricoh Corp*., 810 F.2d 1066, (11th Cir. 1987) (reversing district court's ruling that breach of warranty, fraud, and antitrust claims did not fall within the scope of forum selection clause in dealer sales agreement); *Bense* v. *Interstate Battery Sys.*, 683 F.2d 718, 720 (2d Cir. 1982) (affirming district court's ruling that antitrust claims fall within scope of distribution agreement); *Methode Elecs., Inc.* v. *Delphi Auto. Sys. LLC*, No. 09 CV 2191, 2009 U.S. Dist. LEXIS 59462, at *11-12 (N.D. Ill. July 13, 2009) (patent infringement claims fall within the scope of forum selection clause in supply contract); *Universal Grading,* 2009 U.S. Dist. LEXIS 49841, at *50-52 (antitrust claims fall within scope of forum selection clause in user agreement); *United States Gypsum Co.* v. *3M Innovative Props. Co.*, No. 07 C 6381, 2008 U.S. Dist. LEXIS 13529, at *5-6 (N.D. Ill. Feb. 20, 2008) (patent infringement claims fall within scope of forum selection clause in confidential disclosure agreement); *Advent Elecs., Inc.* v. *Samsung Semiconductor, Inc.*,

9

709 F. Supp. 843, 846 (N.D. Ill. 1989) (Illinois Trade Secrets Act and breach of fiduciary duty claims fall within scope of forum selection clause in distribution agreement). Because ISA's Robinson-Patman claim is governed by the forum selection clause in the Credit Agreements, venue is improper in the Northern District of Illinois and the case will be dismissed.[10]

**CONCLUSION AND ORDER**

For the reasons stated above, Swisher's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(3) [#10] is granted.


DATED: September 25, 2009          ENTER: _____
                                          JOAN HUMPHREY LEFKOW
                                          United States District Judge

---

[10] ISA does not argue, as permitted by 28 U.S.C. § 1406(a), that the court should transfer the case to the Middle District of Florida in the interest of justice should it determine, as it has, that venue is improper.